## UNITED STATES v. STANDARD OIL CO. OF NEW YORK.

(District Court, W. D. New York. August 11, 1911.)

No. 469.

CARRIERS (§ 38*)—DISCRIMINATION—REBATES—SEPARATE OFFENSES.

>   Where defendant made different shipments of oil in interstate commerce at concession rates, delivered throughout the year, the bills being marked prepaid, and settlements made at a lower rate than that published, at various intervals, all shipments contained in one freight settlement between the parties did not constitute a single offense, but, notwithstanding a settlement was essential to make out the offense of receiving concession rates, on such settlement being consummated, there were as many offenses committed as there were distinct shipments, transportations, or transactions.

>   [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 38.*

>   What constitutes an unlawful preference or discrimination by a carrier under interstate commerce regulations, see note to Gamble Robinson C. Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

Prosecution by the United States against the Standard Oil Company of New York for violation of the Elkins act, in accepting rebates on various shipments of oil. On plea of former conviction. Overruled.

John Lord O'Brian and S. Wallace Dempsey, for the United States. Daniel J. Kenefick, for defendant.

HAZEL, J. The defendant, Standard Oil Company of New York, has been indicted for accepting concessions from the Pennsylvania Railroad Company and New York Central & Hudson River Railroad Company in violation of the Elkins act, passed February 19, 1903, in respect to 180 shipments of petroleum from Olean. N. Y., to Burlington, Vt. On the opening of court, and on motion of the United States attorney, a nolle pros. was entered as to 37 counts of the indictment, leaving 143 counts the subject of this controversy. The defendant filed a special plea in bar which alleges a former conviction by a judgment of this court of the specified offenses. The government filed a replication, and, though admitting the material allegations of the plea, deny that the facts upon which the plea rests constitute a bar, or that the defendant because of anything shown in the record of the prior trial on indictment No. 470 could not be prosecuted or punished for the violations charged in the present indictment. As an issue of fact arose concerning an averment in the replication, a rejoinder was filed by the defendant, and testimony was taken, and arguments were made by counsel resulting in the submission to this court for decision, a jury trial having been waived, of the controversy arising upon the said plea in bar.

The issue of fact related to the system of transporting the property with the rate charges marked prepaid on the shipping orders and bills of lading by the local agent of the initial carrier. It was contended by the government that the effect of marking the shipping orders prepaid, which was pursuant to prearrangement with the defend-

ant, immediately operated as a payment of the concession rate and a consummation of the offense; but, upon considering the record in its entirety, I am satisfied that such marking and the manner of transmitting the accounts by the local agent to the office of the general auditor of the carrier was simply under its regular system of accounting and reporting shipments, and that the rate charges in controversy were subsequently paid upon the delivery of a statement of the shipments by the carrier to the defendant. If such testimony has any value whatever, it may be considered only as bearing upon the question of the character of the transaction, and as to whether shipments on different days were regarded by the carriers as separate and distinct from the preceding, and it is therefore thought that the pleadings fully present the issue of law and fact. It is shown, in substance, that in indictment No. 470 the shipments of petroleum were from Olean, N. Y., to Bellows Falls and to Rutland, Vt., and were carried by the Pennsylvania, New York Central & Hudson River, and Rutland Railway Companies at a total rate which was less than the rate established by law. Upon conviction for accepting concessions in violation of the Elkins act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1909, p. 1138]), the defendant was fined $20,000 and costs, and after affirmance of the conviction by the Circuit Court of Appeals (Standard Oil Co. v. United States, 179 Fed. 614, 103 C. C. A. 172) the fine and costs were paid by the defendant.

In the present indictment, No. 469, the shipments were transported upon separate bills of lading and shipping orders from Olean, N. Y., to Burlington, Vt., upon different days over the three railroads hereinbefore named, and also over the Central Vermont Railway. The same tariff rate on the shipments specified in both indictments was paid by the defendant monthly upon bills rendered by the carrier covering all the transportations of petroleum during the preceding month, and such payments and settlements included, not only the transportations contained in the indictment upon which the defendant has been convicted, but also the specific transportations now before the court. The principal question argued at the bar was that the payment at a concession rate was the essential ingredient of the offense, and, as there had already been a conviction on concessions represented by 10 monthly payments, the defendant should not again be placed in jeopardy. The question depends upon whether different independent shipments of oil are converted into as many offenses only as there were payments at the concession rate. The argument of the defendant is reduced to this: If there were separate and distinct shipments of petroleum at concession rates daily throughout the year and the rate paid annually by the shipper, there could be but a single offense, as the crime was fixed and became an accomplished fact only upon payment of the rate. The defendant in support of its contention places reliance upon the decision of the Circuit Court of Appeals for the Seventh Circuit in Standard Oil Company of Indiana v. United States, 164 Fed. 376, 90 C. C. A. 364, holding, in effect, that the crime of accepting a concession from the lawful rate is not completed until there is a consummation by payment of the lower rate, and holding

that the trial court erred in adopting the view that the number of offenses is the number of car loads of property transported "irrespective of whether each car load constituted the whole or a part only of a single transaction." As bearing upon this point the court said:

"The offense of accepting a concession is the 'transaction' that the given rebate consummates, not the units of mere measurement of the physical thing transported, but the 'transaction' whereby the shipper, for the thing shipped, no matter how great or how little its quantity, received a rate different from the established rate; the wide range between maximum and minimum punishment being doubtless thought to be a sufficient range within which to differentiate the punishment adapted to one transaction from the punishment adapted to another."

And, speaking of the number of offenses based upon car loads of the commodity transported as bearing upon the actual transaction between the shipper and the carrier, the court said:

"The shipments upon which the indictment was based were within the period from September 1, 1903, to March 1, 1905, were carried in 1,462 car loads, and were settled for, and the charges thereon paid, upon 36 distinct days within that period. The proof shows, also, that in the regular course of business, whenever an order came to plaintiff in error from a buyer in the St. Louis district (the order being in gallons or barrels, not cars), the order was translated by the clerks into car loads, according to the capacity of the cars, running all the way from thirty thousand to eighty thousand pounds; that the oil was then loaded upon the cars—cars for that purpose nearly always standing in the yards—and that the cars were then turned over to the carrier, some single orders filling six or eight cars. Notwithstanding this, in the indictments, and upon sentence, each single car load was dealt as a separate offense."

The admitted facts of the case at bar relating to the shipments or transactions are thought essentially different. Here the shipments of oil did not result in a division of a train load into car load lots. Indeed, the contract of shipment which culminated in the acceptance by the defendant of concessions was the transportation as evidenced by shipments on different days, each shipment consisting of an order for a car load of oil. Did the defendant accept a concession on a shipment of a car load of oil which was consummated by payment at the lower rate, or did the defendant accept concession rates on two or three or more car loads or a train load on a specified day? In either case, under the doctrine of the Indiana Case, supra, there was but a single offense. But, if, as here, on different days a single car of petroleum constituted the shipment, as indicated by the order for the commodity, and a concession between the shipper and carrier was agreed upon as to such order and which subsequently became a completed offense by payment, then in my judgment each shipment was a separate transaction and separate and independent offenses were committed which are punishable by a separate fine, since the statute makes it an offense to accept or receive any concession "in respect to the transportation of any property" in interstate commerce by any common carrier, subject to the provisions of the act. A single payment of a multitude of different transactions or separate shipments on different orders for oil does not in my opinion constitute a single offense.

I do not think the opinion of Judge Grosscup in the Indiana Case is at variance with these views. The court unequivocally holds that there was a better way to measure the number of offenses than that adopted by the trial court which resulted in multiplying the offenses owing to the manner in which the shipments were divided by the carrier, but it was not decided that a number of separate and independent shipments based upon different contracts of shipment and which became completed transactions constitute but a single offense upon payment of the concession rates. It is true the learned court emphasizes that the "transaction" which the payment consummates is not the unit of the quantity or "the mere measurement of the physical thing" which is transported, but nowhere in the opinion is it stated that the number of offenses depends upon the number of settlements or payments at the concession rate. If such were the rule of law, it would be in the power of any shipper who daily transports merchandise, and who with the acquiescence of the carrier pays the freight charges annually, to make it impossible to adequately prosecute and punish him for accepting concessions on his various transactions, while a less favored shipper who receives concessions, but to whom credit is not extended, may be subjected to more frequent prosecutions and punishments. The Supreme Court in Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681, though not considering the act as to the punishment that may be imposed for accepting a concession, says, in substance, that the statute properly construed makes it an offense to receive any concession whereby any property is transported by any device whatever at less than the lawful rate and the Supreme Court, in considering the question of jurisdiction to prosecute in any district through which the property passes, says:

"Having in view the offense charged in this case, we think it is clearly within the terms of the act making it penal to procure the actual transportation by any of the means denounced in the act of goods at a less rate than that named in the tariffs. It is the purpose of the act to punish those who give or receive transportation, in the sense of actual carriage, at a concession from the published rates. Wherever such transportation is received, there the offense is to be deemed to have been committed. Why may not this be so? In this feature of the statute, the transportation being of the essence of the offense, when it takes place, whether in one district or another, whether at the beginning, at the end, or in the middle of the journey, it is equally and at all times committed."

This language would seem to convey the idea that the acceptance of a concession on different transportations of property, that is, the mere agreement to transport at an unlawful rate followed by transportation interstate was sufficient to complete the offense, were it not limited by the words "in this feature of the statute," etc., to the question solely of jurisdiction. Though payment at the concession rate is apparently not the essential ingredient of the offense (Standard Oil Company of New York v. United States, supra), the offense must nevertheless be consummated and completed by payment of the concession rate, and, giving proper effect to the opinion of Judge Grosscup in the Indiana case, it would be a strained construction of the

act to hold that the shipper could be guilty of violating its provisions forbidding the acceptance of a concession without completing his intention to violate the statute either by payment at the concession rate in cash or its equivalent. There must be a concurrence of the elements of transportation between two states and payment at the concession rate.

The defendant directs attention to the holding in the second trial of United States v. Standard Oil Company of Indiana (D. C.) 170 Fed. 998, where Judge Anderson says there would not be any more offenses during the period covered by the indictment than the evidence showed there had been payments at the concession rate. Such views, however, were expressed under a state of facts which did not disclose the character and extent of the shipments or transactions— i. e., as to whether one car load or a number of car loads constituted the transaction by which the property was carried—and the court properly considered that, under the evidence in that case, there might be a doubling up on the defendant of the specific offenses actually committed. The record in this case, however, does not indicate any legal reasons for restricting the number of violations of the statute to the specific number of payments.

In addition to these considerations, it is to be observed by way of summary that the shipments in question were transported on different days upon separate shipping orders unconnected with each other, and on different days from the transportations or transactions specified in the indictment No. 470; that each shipment was transported by the carriers under separate shipping orders and waybills to different points, and though the concession rates were under the same tariff order in evidence in the former prosecution, and there existed the same difference between the legal rates and the concession rates which were included in the payment of the rates on shipments contained in the indictment previously tried, there was, nevertheless, an absence of identity between the offenses charged in the several indictments, and the offenses in the present indictment are not provable by the same evidence. On the contrary, separate and independent offenses are alleged, each isolated from the other, which prima facie constitutes separate transactions between the defendant and the carriers.

For the foregoing reasons, the plea in bar is without merit, and must be dismissed. The defendant is required to plead over at the next regular term of court.

The defendant was convicted and fined $55,000. No appeal was taken.